IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

Onasni Property Group, LLC           Bankruptcy No. 09-28455-JKF
    Debtor(s)

                                   Chapter 11

First Commonwealth Bank
    Movant(s)

v.                                    **Related to Doc. No. 73, Motion for Relief**
Onasni Property Group, LLC          **from the Automatic Stay**[1]
    Respondent(s)

**MEMORANDUM OPINION**[2]

The issue before the court is whether First Commonwealth Bank (hereafter "Bank" or "Mortgagee"), which has an undisputed and properly recorded first mortgage, together with an absolute assignment of leases and rents in Debtor's rental real estate located at 600 Fallowfield Avenue, Charleroi, PA, 15022, is entitled to relief from stay:

1 - pursuant to 11 U.S.C. §362(d)(1), for cause because Debtor is in default, only one tenant occupies the property, and the Bank is not adequately protected inasmuch as, although it is collecting rent in the amount of $225 per month, interest on the note accrues at a per diem rate of $31.545943 or $946.38 per month; and/or

---

[1] The motion is so captioned but is docketed simply as Motion for Relief from Stay.

[2] The court's jurisdiction was not at issue. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

2 - pursuant to 11 U.S.C. §362(d)(2), for lack of equity in the property[3] coupled with Debtor's alleged inability to use the property for an effective reorganization because the rents the property produces are not property of the estate.

Debtor contends that the Bank is the source of its own woes and defends the motion on the grounds that the Bank is undersecured and not entitled to adequate protection. Debtor asserts that there are eight rental units on site and, when fully rented, the units produce gross rents of $2695 per month with net rents after operating expenses of about $1745 per month. Debtor contends that when the Bank notified tenants to pay it rather than Debtor, all units were rented. Debtor acknowledges that at the time the Bank exercised its rights under its assignment of rents, Debtor was in arrears on water bills and, as a result of nonpayment, soon after the Bank exercised its rights, the water service was turned off resulting in seven of the eight tenants vacating the building. (The eighth tenant has its own metered water service and was not required to move. That tenant is still paying rent of $225 per month to the Bank.)

Debtor's contention is that if the units were all rented, as they were prior to the loss of water service to the building, and if a §506 action Debtor has commenced against the Bank is successful, then the crammed down mortgage can be paid through a plan. For example, Debtor asserts that a plan could permit the Bank to continue to collect the rents until the reduced debt is paid off, following which the Debtor will have the property free of the mortgage and free of the assignment of rents. Because the property generates approximately 19 per cent of Debtor's revenues, it would then produce income to pay other creditors in the case. We note that we are

---

[3]The parties agree that there is no equity in the property but dispute its necessity to the reorganization.

not called upon to determine plan confirmation issues; a plan has not yet been filed. However, we agree with Debtor that if Debtor is successful in the §506 action and a plan is confirmed,[4] the property will be necessary for a reorganization. Thus, we need go no further in looking at §362(d)(2) at this time. However, that leaves at issue the dispute regarding adequate protection or relief from stay "for cause" pursuant to §362(d)(1).

The parties agree that under *Commerce Bank v. Mountain View Village, Inc.,* 5 F.3d 34 (3d Cir. 1993),[5] and *In re Robin Associates*, 275 B.R. 218 (Bankr.W.D.Pa. 2001),[6] the postpetition rents generated by this property, which rents are subject to a valid rent assignment, are not property of Debtor's estate. The dispute centers, first, on whether the Bank took possession when it exercised its right to collect the rents. The resolution of this matter will inform as to the second issue, which centers on what the Bank's obligations were regarding

---

[4] Because this is not the time set for plan confirmation, issues such as a potential §1111(b) election by the Bank have not been addressed by either party.

[5] *Mountain View* provides at 38:

> [i]f the owner is in default, the mortgagee may enforce the mortgage provision that conveys the rents to him by peacefully entering the premises and taking the profits until the debt is paid. *Bulger v. Wilderman*, 101 Pa.Super. 168, 172 (1931). '[T]he equivalent of entry may be obtained by the mortgagee making demand on the tenants for the rent ... and payment of the same by them.' *Id.* at 176. The mortgagee must account to the mortgagor for the amount of rents received, however, and credit the mortgage debt for the sums collected."

5 F.3d at 38.

[6] *Robin Associates* provides at 221: "the Third Circuit has held that, under Pennsylvania law, a mortgagee under identical circumstances . . . obtains ownership of assigned rents from the moment that notice is served by the mortgagee to a mortgagor's tenants to commence making rental payments to the mortgagee." 275 B.R. at 221.

application of the rents after the Bank collected them.

From a review of the mortgage,[7] which contains an assignment of rents, and the separate Assignment of Leases and Rents (hereafter Assignment),[8] and based on the arguments of counsel at the hearing on March 5, 2010, we find that the Bank did not take possession.

Paragraph 17(b)(ii) of the mortgage defines how the Bank as mortgagee will take possession. It states:

> FOR THE PURPOSE OF OBTAINING POSSESSION OF THE MORTGAGED PROPERTY AFTER THE OCCURRENCE OF AN EVENT OF DEFAULT, MORTGAGOR HEREBY AUTHORIZES AND EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD IN THE COMMONWEALTH OF PENNSYLVANIA OR ELSEWHERE, AS ATTORNEY FOR THE MORTGAGOR . . . FOR ENTERING IN ANY COURT AN AMICABLE ACTION IN EJECTMENT FOR POSSESSION OF THE MORTGAGED PROPERTY . . . .

Mortgage at ¶17(b)(ii), Exhibit B to Doc. No. 73. Debtor consented to entry of a confessed judgment in the mortgage, Mortgage at ¶17(b)(ii), Exhibit B to Doc. No. 73, and, later, agreed not to contest certain confessed judgments pursuant to a separate forbearance agreement with the Bank. *See also* Doc. No. 73, Exh. D, Letter of March 10, 2009, from counsel for First Commonwealth Bank to Gary W. Short, Esquire, counsel for Debtor. Under the forbearance agreement, the Bank would not take action on the confessed judgment upon Debtor complying with the terms of that agreement. There is no indication on the record that the Bank took action on the basis of the confessed judgment. It is thus clear that the Bank did not take physical possession of the property.

---

[7]Exhibit B to Doc. No. 73

[8]Exhibit C to Doc. No. 73

Moreover, the Assignment uses the word "may" in describing the Bank's various entitlements which included the right to take possession and the right to collect rents, whether or not the Bank also took possession. On this record, the Bank elected to collect rents but not to enter into physical possession of the property and took no action to dispossess the Debtor from its ownership or management of the property. It merely notified tenants to pay rents to it rather than to Debtor.

The second dispute concerns what obligations the Bank incurred as the result of exercising its right to collect the rents. A review of the mortgage and Assignment presents the answer. Debtor's contention is that, upon collecting the rents, the Bank was obligated to manage the property and apply rents to the expenses of that management. However, that is not the case.

Debtor cites paragraph 4 of the Assignment in support of its argument that the Bank was obligated to apply sums received to expenses related to the management and operation of the property. The fourth numbered paragraph of the Assignment provides that upon default, the Bank as Assignee

> **may**, without notice **enter and take possession** of the Property or any part thereof, **and upon such entry, manage**, lease and operate the same on such terms and for such period of time as Assignee may deem proper, and **whether or not Assignee has so entered and taken possession of the Property or any part thereof, perform any of the obligations and . . . do any and all acts . . . that Assignor is entitled to do, under and with respect to the Leases,** including without limitation . . . collecting and receiving sums due thereunder.

Doc. No. 73, Exhibit C at 2-3, ¶4 (emphasis added). Paragraph 4 continues as follows:

> Assignee shall apply any sums received . . . first to the payment of all expenses which Assignee may be authorized to incur under the provisions of this Assignment or the Mortgage . . . and then to the payment of the sums due Assignee under the Note.

5

*Id*. Although the Bank would have to apply rents first to its expenses, if it had any such expenses, there is nothing in the Assignment that **requires** the Bank to enter and take possession or to manage the property. In fact, the Assignment is clear that the Debtor remained liable "to perform all of the obligations of [Debtor] . . . to the same extent as if this Assignment had not been executed." *Id*. at 2, ¶3. Paragraph 3 of the Assignment further provides that the Bank "shall **not** have any obligation or liability under the Leases or otherwise by reason of or arising out of this Assignment." *Id*. (emphasis added). Paragraph 9 of the Assignment states that the Bank's rights and remedies are cumulative and not exclusive of any rights and remedies the Bank would have under the note and mortgage, at law or in equity. Here, the Bank collected rents but did not enter into possession or manage the property. *Id*. at 3, ¶ 9.

Furthermore, paragraph 17(b)(ii) of the mortgage entitled "Possession," shows again that the parties provided discretion to the Bank with respect to taking possession, managing or operating the property and as to what to pay:

> [the Bank] may enter into possession of the Mortgaged Property, manage, . . . lease and operate Mortgaged Property, collect therefrom all rentals . . . **and, after deducting all costs of collection and administration expenses, apply the net rentals to any or all of the following in such order and amounts as [the Bank], in [its] sole discretion, may elect**: debt service on the Mortgage, the payment of taxes, water and sewer rents, charges and claims, insurance premiums and all other carrying charges, and to the maintenance, repair or restoration of the Mortgaged Property, and on account and in reduction of the principal or interest, or both. . . .

Doc. No. 73, Exhibit B at 11-12, ¶17(b)(ii) (emphasis added).

Paragraph 18(a) of the mortgage provides that the rights and remedies of the Bank "shall be cumulative and concurrent; may be pursued separately, successively or together against

[Debtor] or against the Mortgaged Property, or both, at the sole discretion of the Bank." *Id*. at 13. From the terms of the mortgage itself it is clear that the application of rents collected is solely in the discretion of the Bank.

Thus, based upon the language of the mortgage and Assignment, Debtor's view of the Bank's obligations upon collecting rents is in error. The Bank did not assume responsibility to pay the delinquent water bill. Debtor remained responsible for paying the delinquent water bill and for the consequences that followed nonpayment.

Regarding the Bank's statement that it is not adequately protected and is therefore entitled to relief from stay for cause and Debtor's assertion that the Bank is not entitled to adequate protection as an undersecured creditor, the Court finds that Debtor is in error. The United States Supreme Court has addressed this issue and determined that undersecured creditors can be entitled to adequate protection.[3] However, the Court cannot determine the Bank's entitlement, if any, at this time. The Court has no evidence at present as to the value of the property on the date of filing of the bankruptcy petition or on which to determine whether there is a diminution in value caused by the bankruptcy that would warrant provision of adequate protection to the Bank. The parties have indicated that they will present valuation evidence in connection with the §506 action, as to which a pretrial conference has already been scheduled for

---

[3] In *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365 (1988), the Supreme Court held that undersecured creditors are entitled to adequate protection to compensate them for the depreciation in their collateral during the delay the automatic stay imposes upon the exercise of their state law remedies. *See also In re Deico Electronics, Inc.*, 139 B.R. 945, 947 (9th Cir. BAP 1992)("Although the bankruptcy code and *Timbers* mandate that adequate protection payments be equivalent to the depreciation, no strict rule applies to the amount, frequency, or commencement of those payments")

March 31, 2010, at 9:30 a.m.  This motion will be continued to the same date and time.

    An appropriate order will be entered.


DATE: <u>March 10, 2010</u>             *Judith K. Fitzgerald*
                                                Judith K. Fitzgerald    **rmab**
                                                United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

Onasni Property Group, LLC          Bankruptcy No. 09-28455-JKF
    Debtor(s)

                                           Chapter 11

First Commonwealth Bank
    Movant(s)

v.                                                          **Related to Doc. No. 73, Motion for Relief**
Onasni Property Group, LLC                                  **from the Automatic Stay**[1]
    Respondent(s)

### ORDER CONTINUING MOTION FOR RELIEF FROM STAY TO
### MARCH 31, 2010, AT 9:30 A.M. FOR PRETRIAL PROCEEDINGS

**AND NOW,** this __10th__ day of __March__, 2010, for the reasons stated in the foregoing Memorandum Opinion, it is **ORDERED** that the above-captioned Motion for Relief from the Automatic Stay is continued to March 31, 2010, at 9:30 a.m. for pretrial proceedings.

It is **FURTHER ORDERED** that counsel for Movant shall immediately serve a copy of this Order and the accompanying Memorandum Opinion on all parties in interest who do not receive electronic notice and shall file a certificate of service forthwith.

*Judith K. Fitzgerald*  **rmab**
Judith K. Fitzgerald
United States Bankruptcy Judge

---

[1] The motion is so captioned but is docketed simply as Motion for Relief from Stay.